FILED

2013 Mar-25  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARLIN SLADE CHAPPELLE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **vs.** | } | |
| | } | **CASE NO. 2:12-cv-2058-SLB** |
| **CITY OF LEEDS, a municipal** | } | |
| **corporation; R. ERIC** | } | |
| **PATTERSON, Mayor of the City of** | } | |
| **Leeds, in both his individual and** | } | |
| **official capacities,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is currently before the court on defendant City of Leeds's Motion for Partial Dismissal, (doc. 6),[1] and defendant R. Eric Patterson's ("Mayor Patterson") Motion to Dismiss, (doc. 7). Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the City of Leeds's Motion for Partial Dismissal, (doc. 6), is due to be granted in part and denied in part, and Mayor Patterson's Motion to Dismiss, (doc. 7), is due to be granted in part and denied in part.

## I. STANDARD OF REVIEW

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.  To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[2]  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and footnote omitted).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County,* 285 F.3d 1334,

---

[2]  In *Bell Atlantic Corp. v. Twombly,* the United States Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," which was set forth in *Conley v. Gibson.  See Twombly,* 550 U.S. at 561 (quoting *Conley,* 355 U.S. 41, 45-46 (1957)).  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.  The "decision in *Twombly* expounded the pleading standard for 'all civil actions.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009).

1337 (11th Cir. 2002). "'[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.'" *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) (emphasis in original; citation omitted).

## II. **FACTUAL AND PROCEDURAL HISTORY**[3]

The City of Leeds hired plaintiff Marlin Slade Chappelle ("Chappelle") as a paramedic firefighter on July 8, 2000. (Doc. 1 ¶ 3.) Chappelle had over seven years experience as a firefighter and had been certified as a paramedic for approximately ten years. (*Id*. ¶¶ 9 & 13.) Chappelle claims that, pursuant to state law and the City of Leeds's own policies and procedures, his paramedic certification entitled him to a 5% salary increase, which he never received at any point during his employment. (*Id*. ¶¶ 14 & 16.)

Chappelle "spoke out" in defense of Ashley Graves ("Graves"), a female coworker who accused the City of Leeds Fire Department of gender discrimination, in April of 2010. (*Id*. ¶ 18.) A month later, Chappelle sent a letter to the Leeds City Council and Mayor Patterson, the mayor of the City of Leeds, claiming that he had been subjected to discrimination and retaliation. (*Id*. ¶ 21.) Specifically, Chappelle reported that he had

---

[3] The facts are taken from the Complaint and are accepted as true for purposes of deciding these motions to dismiss.

spoken out in defense of Graves, that Mayor Patterson, Fire Chief Pierce, and Captain Musgrove were retaliating against him, and that prior complaints to Mayor Patterson had not resulted in any corrective action. (*Id*. ¶¶ 22-24.) Chappelle also reported that "Chief Pierce was being paid by the City of Leeds while also working as the Chief of the Palmerdale Fire Department," and that "Captain Musgrove was running his personal business while on duty and while being paid by the City of Leeds." (*Id*. ¶¶ 25-26.)

Two weeks after sending the letter, the City of Leeds and Mayor Patterson suspended Chappelle pending an employment hearing. (*Id*. ¶ 31.) The employment hearing was held on May 28, 2010, and the City of Leeds and Mayor Patterson terminated plaintiff's employment on June 7, 2010. (*Id*. ¶¶ 32-33 & 64.) Chappelle was informed that he was terminated for "insubordinate conduct." (*Id*. ¶ 37.)

Chappelle commenced this litigation on June 1, 2012, against the City of Leeds and Mayor Patterson in his individual and official capacities. (*See generally id*.) In Count One, Chappelle alleges that the City of Leeds retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. (*Id*. ¶¶ 57-61.) In Count Two, Chappelle alleges that the City of Leeds and Mayor Patterson in his official and individual capacities retaliated against him in violation of the First and Fourteenth Amendment. (*Id*. ¶¶ 62-66.) Chappelle brings Count Two pursuant to 42 U.S.C. § 1983 ("section 1983"). In Count Three, Chappelle alleges that the City of Leeds and Mayor Patterson in his official capacity breached their contractual obligations and ministerial duties

4

by failing to pay him commensurate with his paramedic certification. (*Id*. ¶¶ 67-70.) The City of Leeds responded by filing the pending Motion for Partial Dismissal, (doc. 6), and Mayor Patterson responded by filing the pending Motion to Dismiss, (doc. 7). Both request dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## III. <u>DISCUSSION</u>

### A.   CLAIMS AGAINST MAYOR PATTERSON IN HIS OFFICIAL CAPACITY

Mayor Patterson moves to dismiss the claims against him in his official capacity, arguing that the claims are duplicative and redundant of the same claims brought against the City of Leeds. Chappelle offers no argument in response.

The court agrees that the section 1983 claims against Mayor Patterson in his official capacity are, in fact, redundant and unnecessary. As noted by the Supreme Court, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Serv. of New York,* 436 U.S. 658, 690 n.55 (1978)). "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citing *Graham*, 473 at 166; *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). Accordingly, the section 1983 claims against Mayor Patterson in his official capacity are due to be dismissed as redundant

and unnecessary because Chappelle has sued the City of Leeds, the relevant municipality, on the same grounds.

However, the authorities cited above and those cited by Mayor Patterson relate exclusively to section 1983 claims.  Mayor Patterson presents no legal authority suggesting that breach of contract claims or breach of ministerial duty claims against a municipal officer in his or her official capacity are duplicative of the same claims against the municipality itself.  In fact, a review of Alabama law indicates that the opposite is true.  When sued in their official capacity, *State* officers are afforded nearly the same absolute immunity that Section 14 of the Alabama Constitution, Ala. Const. art. I, § 14, affords the State of Alabama and its agencies, the reason being that "[t]he State cannot be sued indirectly by suing an officer in his or her official capacity . . . ."  *Ex parte Bessemer Bd. of Educ.*, 68 So. 3d 782, 789 (Ala. 2011) (quoting *Ala. Dep't of Transp. v. Harbert Int'l, Inc.*, 990 So. 2d 831, 839 (Ala. 2008), *abrogated on other grounds by Ex parte Moulton*, No. 1111283, 2013 WL 285726, at *19 (Ala. Jan. 25, 2013)) (internal quotation marks omitted).  However, the Alabama Supreme Court has identified certain causes of action that can be asserted against State officers in their official capacity, but not the State, because "*these actions are simply not considered to be actions against the State for § 14 purposes*."  *Id*. at 790 (emphasis added) (quoting *Harbert*, 990 So. 2d at 840) (internal quotation marks omitted).  Among these causes of action include "actions brought to compel State officials to perform their legal duties," and "actions to compel State officials to perform ministerial acts."  *Id*. at 789-

6

90 (quoting *Harbert*, 990 So. 2d at 840) (internal quotation marks omitted).  Mayor Patterson is not a State official but rather is the chief executive officer of the City of Leeds.  *See* Ala. Code § 11-43D-14 (1975).  "That is to say, [he] is, in [his] official capacity, within the line and scope of [his] office, the agent of the City, through whom the City acts."  *Dickinson v. City of Huntsville*, 822 So. 2d 411, 415 (Ala. 2001).  Thus, suing Mayor Patterson in his official capacity is usually tantamount to suing the City of Leeds itself.  *Id*.  Chappelle, however, alleges that Mayor Patterson, acting in his official capacity, breached contractual and ministerial duties owed to him under Alabama law and the City of Leeds's policies and procedures, and he seeks to compel Mayor Patterson to perform these duties.  Because Alabama law draws a legal distinction between the State and State officers in their official capacity in "actions brought to compel State officials to perform their legal duties," and "actions to compel State officials to perform ministerial acts," *Ex parte Bessemer*, 68 So. 3d at 789-90 (quoting *Harbert*, 990 So. 2d at 840) (internal quotation marks omitted), it is reasonable to assume that the same legal distinction exists between municipalities and municipal officers in their official capacity in actions to compel municipal officers to perform their legal or ministerial duties.  Consequently, the court finds that the state law claims against Mayor Patterson in his official capacity are not duplicative of the same claims brought against the City of Leeds.

## B.   SECTION 1983 FIRST AND FOURTEENTH AMENDMENT RETALIATION CLAIMS

In Count Two, Chappelle alleges that the City of Leeds and Mayor Patterson retaliated

7

against him in violation of the First and Fourteenth Amendment by terminating his employment after he "participated in an EEOC investigation, spoke out against the discriminatory treatment of his coworkers, and reported acts of corruption and retaliation to Defendant Patterson and the Leeds City Council."  (Doc. 1 at ¶ 63.)

### 1.  Fourteenth Amendment Retaliation

Defendants contend that Chappelle's Fourteenth Amendment retaliation claim is due to be dismissed as a matter of law because freedom from retaliation is not constitutionally protected by the Fourteenth Amendment.  Chappelle provides no argument in opposition.

In *Ratliff v. DeKalb County*, 62 F.3d 338 (11th Cir. 1995), the Eleventh Circuit plainly stated that "[t]he right to be free from retaliation is clearly established as a *first amendment* right and as a *statutory* right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation."  *Id.* at 340 (emphasis in original). Chappelle's contention that he was terminated because of his protected expression raises a retaliation claim under the First Amendment, but "[a] pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause."  *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) (citations omitted).  Accordingly, the Fourteenth Amendment retaliation claims against the City of Leeds and Mayor Patterson are due to be dismissed.

### 2.  First Amendment Retaliation

#### a.  City of Leeds

The City of Leeds contends that Chappelle's First Amendment retaliation claim,

brought pursuant to section 1983, is due to be dismissed because Chappelle has not pleaded a basis for establishing municipal liability.  Indeed, "[t]he Supreme Court has placed strict limitations on municipal liability under § 1983."  *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003).

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694.  This test contemplates that the claimant identify "(1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker," *Grech*, 335 F.3d at 1329 (citations omitted), that was the "moving force [behind] the constitutional violation," *id*. at 1330 (quoting *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)) (internal quotation marks omitted).

In the instant case, Chappelle has not identified any official policy or well-settled custom or practice attributable to the City of Leeds which was the "moving force" behind his termination.  Although Chappelle alleges that his discharge constituted a governmental action in violation of the First Amendment, this allegation, standing alone, does not create a plausible basis for imposing municipal liability.  The court therefore concludes that the section 1983 First Amendment retaliation claim against the City of Leeds is due to be dismissed.

### b.    Mayor Patterson - Individual Capacity

Mayor Patterson contends that the section 1983 First Amendment retaliation claim brought against him in his individual capacity is barred by the doctrine of qualified immunity.[4]

The Eleventh Circuit has explained that:

> When government officials act in a way that knowingly violates a clearly established statutory or constitutional right of which a reasonable person would have known, they are not immune from suit and may be held liable for the damage their actions caused. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). But when these same officials make decisions that do not knowingly violate such rights, they are not required to defend themselves in a lawsuit seeking damages. *Id.* They are "immune" from suit. *Id.* We call this defense "qualified immunity" because the official is immune from a damage lawsuit, qualified upon his ability to show that he did not knowingly violate the plaintiff's clearly established constitutional right. *Id.*

*Ray v. Foltz*, 370 F.3d 1079, 1081-82 (11th Cir. 2004).

A plaintiff withstands a motion to dismiss predicated on qualified immunity by alleging "sufficient facts to support a finding of a constitutional violation of a clearly established law." *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir.

---

[4] Mayor Patterson claims that section 1983 claims involving defendants capable of raising qualified immunity are scrutinized under a specifically heightened pleading standard. Although the Eleventh Circuit previously applied a heightened pleading standard to section 1983 claims, this changed following the Eleventh Circuit's decision in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). In *Randall*, a panel of the Eleventh Circuit interpreted the Supreme Court's holding in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), as overturning its prior application of a heightened pleading standard in section 1983 cases. *Randall*, 610 F.3d at 708-09. The panel held that "[p]leadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*." *Id.* at 709. Thus, the plausibility standard enunciated in *Iqbal* and *Twombly* is the applicable pleading standard here.

2012) (citing *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)); *see also Andreu v. Sapp*, 919 F.2d 637, 639 (11th Cir. 1990) ("[T]he defendant is entitled to dismissal when the plaintiff has failed to *allege* a violation of a clearly established right." (emphasis in original) (citing *Harlow*, 457 U.S. at 818)).  Therefore, Chappelle must allege that Mayor Patterson violated his First Amendment rights and that his First Amendment rights were "clearly established" at the time of the alleged violation.[5]

To establish a First Amendment retaliation claim, a public employee must demonstrate that: "(1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action." *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005) (citing *Bryson v. City of Waycross*, 888 F.2d 1562, 1565-66 (11th Cir. 1989)).  "The first two elements are questions of law designed to determine whether the First Amendment protects the employee's speech." *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 760 (11th Cir. 2006).  The third element is a "question[] of fact designed to determine whether the adverse employment action was in retaliation for the protected speech." *Id.* (citation omitted).  Mayor Patterson challenges the third element, arguing that Chappelle has not alleged an adverse employment action, or any wrongdoing for that matter, taken by Mayor Patterson in retaliation for Chappelle's exercise of protected speech.

---

[5]  Courts may consider "the two prongs of the qualified immunity analysis" in any order, at their discretion.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Although the Complaint contains little about any specific retaliatory conduct, in Paragraph 64, Chappelle alleges that the "[a]ctions taken by Defendants [(*i.e.* the City of Leeds and Mayor Patterson)], ***including the discharge of Plaintiff*** . . . were in retaliation for Plaintiff's protected speech." (Doc. 1 ¶ 64 [emphasis added].) Paragraph 64 suggests that Mayor Patterson was at least partially responsible for the decision to terminate Chappelle, and it is axiomatic that termination constitutes an adverse employment action. Furthermore, the one-month temporal proximity between the alleged protected speech and Chappelle's termination raises a plausible inference that the protected speech played a substantial or motivating role in Mayor Patterson's decision. *See Castillo v. Roche Labs., Inc.*, 467 F. App'x 859, 862 (11th Cir. 2012) (stating that a one-month interval between a decisionmaker's awareness of protected activity and an adverse employment action, standing alone, may be sufficient to establish causation under Title VII); *Akins v. Fulton County*, 420 F.3d 1293, 1305 (11th Cir. 2005) (utilizing the "close temporal proximity" standard applicable to Title VII retaliation cases to assess causation in a First Amendment retaliation case). Accordingly, the court concludes that Chappelle has adequately alleged that he suffered a constitutional violation at the hands of Mayor Patterson.[6]

The second part of the qualified immunity analysis is more simple, that is, whether the law was clearly established that Mayor Patterson could not terminate Chappelle in retaliation

---

[6] The court is, of course, not deciding whether Chappelle can actually establish a constitutional violation, merely that he has alleged such a violation for purposes of deciding Mayor Patterson's Motion to Dismiss.

for exercising his First Amendment rights.  As stated by the Eleventh Circuit, "[t]he law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech."  *Travers v. Jones*, 323 F.3d 1294, 1295 (11th Cir. 2003) (citing *Rankin v. McPherson*, 483 U.S. 378, 383 (1987); *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001)); *see also Ratliff*, 62 F.3d at 340 ("The right to be free from retaliation is clearly established as a *first amendment* right . . . ." (emphasis in original)).

Because the factual allegations plausibly demonstrate that Mayor Patterson violated Chappelle's clearly established First Amendment rights, the court finds that Mayor Patterson is not entitled to qualified immunity at this stage of the proceedings.

## C.   BREACH OF CONTRACT AND MINISTERIAL DUTIES CLAIMS

In Count Three, Chappelle alleges that the City of Leeds and Mayor Patterson in his official capacity breached contractual and ministerial duties by failing to pay him a 5% salary increase commensurate with his paramedic certification as required by the "applicable law, procedures, and City policy."  (Doc. 1 ¶¶ 67-70.)  Chappelle requests, *inter alia*, backpay and an order compelling defendants "to pay Plaintiff according to his vested property interest in his proper compensation under the law."  (*Id*. at 13.)  Defendants contend that Count Three is due to be dismissed in its entirety because (1) Chappelle has not alleged the existence of a binding contract, and (2) Alabama law does not recognize breach of ministerial duty claims

against municipalities or municipal officers.[7]

With respect to defendants' first argument, the court agrees.  It is beyond peradventure that to state a claim for breach of contract a plaintiff must allege the existence of a valid, binding contract between the parties, *see Barrett v. Radjabi–Mougadam*, 39 So. 3d 95, 98 (Ala. 2009), and there are such no allegations in the Complaint.  Moreover, although "the adoption by an employer of policies and procedures *may*, under appropriate facts, give rise to implied contractual terms of employment between the employer and the employee," *McCord-Baugh v. Birmingham City Bd. of Educ.*, 894 So. 2d 672, 676 (Ala. Civ. App. 2002) (emphasis in original), *rev'd in part on other grounds sub nom.*, *Ex parte McCord-Baugh*, 894 So. 2d 679 (Ala. 2004), Chappelle also has not alleged a cause of action for breach of an implied contract.  An employment policy creates implied contractual obligations only when (1) "the language . . . is specific enough to constitute an offer," (2) "the offer [is] . . . communicated to the employee," and (3) "the employee . . . accept[s] the offer by retaining

---

[7] The court will not address defendants' argument that Chappelle has not exhausted his administrative remedies with respect to Count Three because defendants raise this argument for the first time in reply.  *See, e.g.*, *Wetherbee v. S. Co.*, 423 F. App'x 933, 934 (11th Cir. 2011) ("[A]lthough Wetherbee briefed these issues in detail in his reply brief, we do not consider arguments raised for the first time in a reply brief."); *Butler v. Cleburne County Comm'n*, No. 1:10–cv–2561–PWG, 2012 WL 2357740, at *6 (N.D. Ala. Jan. 17, 2012) ("[T]he court generally does not consider issues or arguments raised for the first in a reply, for to do so deprives the non-movant of a fair opportunity to respond.").  The court also pretermits discussion as to defendants' alternative argument that any breach of contract claim arising before June 1, 2010, is subject to dismissal on statute of limitations grounds.  As discussed *infra*, Chappelle's breach of contract claims are due to be dismissed for failure to state a claim.  If Chappelle hereafter amends his complaint to state a breach of contract claim, defendants are free to reassert their statute of limitations defense.

employment after he . . . become[s] generally aware of the offer." *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 735 (Ala. 1987). Chappelle, however, has not identified an employment policy obligating either defendant to pay him a salary increase. Chappelle also has not alleged that any such policy was communicated to him during his employment or that he retained employment after becoming aware of the policy. Accordingly, plaintiff's breach of contract claim is due to be dismissed.

As to defendants' second argument, defendants contend that Alabama law forbids breach of ministerial duty claims against municipalities or municipal officers in their official capacities. "A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. It is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." *Ex parte Ala. Dep't of Forensic Sciences*, 709 So. 2d 455, 458 (Ala. 1997) (citation and internal quotation marks omitted). In other words, a ministerial duty is one prescribed by a governing rule or source of law, the performance of which involves no exercise of judgment or discretion. Alabama courts have compelled municipalities and municipal officers to perform their nondiscretionary legal duties. *See, e.g.*, *City of Birmingham v. Pers. Bd. of Jefferson County*, 464 So. 2d 100, 103 (Ala. Civ. App. 1984) (compelling the city and its police chief and personnel officer to enforce a decision of the personnel board's grievance committee, which the court characterized as a "ministerial act"). In a similar case, a teacher sued the Bessemer Board of Education, a State agency, and its individual members in their official capacities, seeking backpay and a

recalculated future salary based on an alleged miscalculation of a salary increase due to her under Alabama statute. *Ex parte Bessemer*, 68 So. 3d at 786.  The Alabama Supreme Court held that the absolute immunity afforded to the State and its agencies under Section 14 of the Alabama Constitution immunized the Bessemer Board of Education from the plaintiff's lawsuit. *Id.* at 790.  However, the Alabama Supreme Court held that the individual members of the Bessemer Board of Education in their official capacities could be compelled "to perform their legal duty or to perform a ministerial act." *Id.*  The Alabama Supreme Court reasoned that:

> The amount of the salary increase the Bessemer Board members must pay [plaintiff] involves obedience to the statute; it does not involve any discretion. The Bessemer Board members have a legal duty to pay [plaintiff] the correctly calculated salary increase under the statute and in doing so they are performing a ministerial act. Therefore, [plaintiff]'s action against the Bessemer Board members in their official capacities is not an action "against the State" for § 14 purposes; thus, the Bessemer Board members are not entitled to § 14 immunity from [plaintiff]'s action to compel them to fulfill their statutory duty to pay her the appropriate salary increase.

*Id.* at 790-91.  In the instant case, Chappelle asserts a comparable claim and seeks similar relief but against a municipality and a municipal officer, neither of whom are afforded absolute State immunity. *See Ex parte City of Tuskegee*, 932 So. 2d 895, 901 n.3 (Ala. 2005) ("Absolute immunity does not extend to municipalities or its agents." (citations omitted)).  Based on the foregoing, the court concludes that Alabama law does not foreclose Chappelle from seeking to compel the City of Leeds and Mayor Patterson in his official capacity to perform their nondiscretionary legal duties.

16

## IV. **CONCLUSION**

For the foregoing reasons, the court is of the opinion that the Motion for Partial Dismissal filed by the City of Leeds, (doc. 6), is due to be granted in part and denied in part, and that the Motion to Dismiss, (doc. 7), filed by Mayor Patterson is due to be granted in part and denied in part. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 25th day of March, 2013.


*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE